2024 IL App (2d) 240015
No. 2-24-0015
Opinion filed March 19, 2024

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-357 |
| JOSHUA SLATEN, | ) ) ) | Honorable Michael J. Chmiel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justice Birkett concurred in the judgment and opinion.
Justice Hutchinson specially concurred.

**OPINION**

¶ 1    The defendant, Joshua Slaten, appeals from the denial of his pretrial release under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we reverse the order denying the defendant pretrial release.

_____

[1] The Act is commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act.

¶ 2                                    I. BACKGROUND

¶ 3     On April 10, 2023, when the police attempted to pull the defendant over for a traffic violation, he led the police on a car chase that started in Spring Grove, Illinois, and ended in Kenosha, Wisconsin. Based on the incident, the State charged the defendant with various non-felony offenses and the following felonies: aggravated fleeing and eluding a police officer (625 ILCS 5/11-204.1(a)(1), (a)(4) (West 2022)) (2 counts; class 4 felony); aggravated identity theft (720 ILCS 5/16-30(b)(1) (West 2022)) (2 counts; class 3 felony); unlawful possession of a credit or debit card (*id.* § 17-32(b)) (2 counts; class 4 felony); and unlawful possession of a controlled substance (*id.* § 570/402(c)) (class 4 felony). There were 25 counts in total.

¶ 4     After being stopped by Kenosha deputies, the defendant was arrested and incarcerated there as a result of pleading guilty to charges stemming from the vehicle chase. On August 18, 2023, the defendant wrote a letter to the circuit court of McHenry County, noting that he was in jail in Kenosha County and that he had waived an extradition hearing and signed extradition papers. He requested a public defender to face the charges in Illinois.

¶ 5     On December 22, 2023, as the defendant was nearing the end of his period of custody in Kenosha, the State filed a verified petition to deny him pretrial release pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State alleged that the defendant was eligible for detention and should be denied pretrial release based on a risk of "willful flight for class 3 and greater felony offenses." Alternatively, if not detained, the State asserted that there should be conditions placed on the defendant's pretrial release.

¶ 6     That same day, the defendant was present in court for his initial appearance in this case, a public defender was appointed, and the trial court conducted a detention hearing. The State first went over the facts of the case. The State noted that a police officer observed the defendant holding

a cell phone and speaking into the phone while also driving. The officer activated his emergency lights. The defendant first slowed down and appeared to be pulling over. However, when the officer slowed down and pulled behind the defendant, the defendant accelerated and began to drive away at a high rate of speed. The officer activated his sirens and emergency lights and began to follow the defendant northbound on Wilmot Road. While driving, the defendant committed multiple traffic offenses. The defendant ultimately crossed the Wisconsin state line and was stopped by Kenosha County deputies. The officer interviewed the defendant. The defendant stated that he decided not to stop because he had a suspended license and did not want to get arrested. A search of the vehicle uncovered open alcohol, drugs, drug paraphernalia, and identification cards and credit/debit cards belonging to other people. The officer's investigation indicated that the defendant was not authorized to be in possession of the aforementioned cards.

¶ 7    Next, the State argued that eluding the police was intentional conduct aimed at thwarting prosecution. The State further noted that the defendant had an extensive criminal history in Illinois dating back to 1995. Many of his arrests were for drug possession and retail theft. In addition, the defendant's pretrial services report indicated that he had "geographical movement" in Illinois, Ohio, Kentucky, West Virginia, and Tennessee. The State also noted that the defendant had failed to appear in court on one occasion in 2009 in Tennessee. For these reasons, the State requested that the defendant be detained pretrial based on the risk of willful flight.

¶ 8    The defendant stated that from April 10, 2023, until the date of the hearing, he was in custody in Wisconsin. While in custody, he participated in a 36-hour per week program that involved classes geared toward a positive return to society. He was a peer mentor and a leader of a group. The defendant acknowledged that in McHenry County, in 2012, there was a single bond forfeiture warrant issued, but it was quashed a week later, "showing that when he did fail to appear

he immediately rectified that situation." The defendant noted that his mother, son, and two sisters all lived in Woodstock and that he had lived in McHenry County for the last 20 years. The defendant argued that eluding the police was not a proper basis for a finding of willful flight, and his criminal history in Illinois demonstrated that he had always appeared in court as required. The defendant acknowledged that a warrant was issued with a cash bond set at $50,000, but that he was electing to proceed under the Act. The defendant requested that the petition for detention be denied.

¶ 9 Following the hearing, the trial court granted the State's petition for detention. The trial court stated that there were so many counts in the complaint that it could foresee "somebody not wanting to have to deal with all this." The trial court noted that there were "elements of missing court dates" and that the charges "involve some element of [flight] as well." The trial court found that there was sufficient evidence to conclude that the defendant posed a risk of willful flight.

¶ 10 The trial court entered a written form order that same day. In the order the trial court indicated that aggravated identity theft was a detainable offense, the defendant posed a real and present threat of willful flight and that no condition or combination of conditions could mitigate the threat. In the place on the form order for the trial court to enter its written findings, the trial court stated that its finding was "based on the proffers offered as well as the evidence on the court file. The Court finds that the charges involve some element of flight and there is evidence that the defendant is a flight risk." The defendant timely appealed from this order. The defendant filed a memorandum in support of his appeal and the State filed a response.

¶ 11                                    II. ANALYSIS

¶ 12 At the outset we note that, in his notice of appeal, the defendant raised, as grounds for relief, that (1) the State failed to prove that he committed a detainable offense, (2) the State failed

to prove that he posed a real and present threat to the safety of others or the community, (3) the State failed to prove that he posed a risk of willful flight risk and that no conditions could mitigate that risk, and (4) the trial court erred in its determination that no set of conditions would reasonably ensure his appearance at later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor. However, in his memorandum, the defendant only presents argument in support of the third issue. As such, the other issues are abandoned. See *People v. Rollins*, 2024 IL App (2d) 230372, ¶ 22 (finding defendant abandoned those Rule 604(h) claims raised in the notice of appeal but not addressed in his memorandum).

¶ 13 On appeal, the defendant argues that the trial court erred in finding that the State met its burden of proving (1) that he posed a high likelihood of willful flight and (2) that there were no conditions or combination of conditions that could mitigate the risk of willful flight.

¶ 14 In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 15 Relevant to this appeal, a court may deny a defendant pretrial release if the defendant "has a high likelihood of willful flight to avoid prosecution and is charged with *** [a] felony offense other than a Class 4 offense." *Id.* § 110-6.1(a)(8)(B). The Code defines "willful" flight as:

"intentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." *Id.* § 110-1(f).

To deny a defendant pretrial release based on willful flight, the trial court must find that the State proved the following by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed a detainable offense as set forth in section 110-6.1(a) and (2) no condition or combination of conditions can mitigate the risk of the defendant's willful flight. *Id.* § 110-6.1(e)(1), (3). Further, in its detention order, the trial court must "make a written finding summarizing [its] reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not *** prevent the defendant's willful flight from prosecution." *Id.* § 110-6.1(h)(1).

¶ 16    We review the court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 17    The defendant's first contention on appeal is that the trial court erred in finding that he posed a high likelihood of willful flight to avoid prosecution. The defendant argues that it was improper for the trial court to consider the number of charges in this case as a basis for a finding of willful flight because the nature of the criminal charges alone cannot be a basis to overcome a defendant's presumed eligibility for release. The defendant also argues that it was improper for the trial court to consider the charges of evading the police because such charges cannot be the basis for a finding that he posed a flight risk.

¶ 18    In support of this contention, the defendant relies on *People v. Sims*, 2024 IL App (4th) 231335-U.  In *Sims*, the defendant was charged with possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), a Class 2 felony.  *Sims*, 2024 IL App (4th) 231335-U, ¶ 4.  The State filed a petition to deny pretrial release based on the defendant having "a high likelihood of willful flight to avoid prosecution."  *Id.* ¶ 4.  At a detention hearing, in support of its petition, the State cited the defendant's extensive criminal history, that he had scored a four out of six on a "failure to appear" assessment report, and that he had failed to appear in court on one prior occasion.  The State also relied on a probable cause statement from the police.  *Id.* ¶ 5.  The facts showed that the police responded to a report of a car driving erratically on the interstate.  The police started following the vehicle but did not activate emergency lights or sirens.  *Id.*  Ultimately, the driver crashed and ran from the vehicle.  The police later found him walking in a cornfield. Upon investigation, the police discovered that the vehicle had been stolen.  *Id.* ¶ 6.

¶ 19    Following the hearing, the trial court granted the State's petition to detain.  *Id.* ¶ 10.  The trial court noted that the defendant had seen the police following him and had tried evade or elude them.  The trial court also noted that the defendant had a prior conviction for resisting a police officer and noted the defendant's score on the failure to appear assessment report.  *Id.*

¶ 20    On appeal, the defendant argued that the trial court erred by relying on his attempts to evade arrest as a basis for finding that he posed a high risk for willful flight.  *Id.* ¶ 23.  The reviewing court agreed and stated that:

> "when determining under subsection 110-6.1(a)(8) whether the defendant may be detained
>
> based on 'a high likelihood of willful flight to avoid prosecution,' (725 ILCS 5/110-
>
> 6.1(a)(8) (West 2022)) the trial court is to consider only 'intentional conduct with a purpose

to thwart the judicial process to avoid prosecution' as provided in the Code's 'willful flight' definition (See *id.* § 110-1(f))." *Id.* ¶ 28.

The reviewing court explained that, while evading arrest could be viewed as obstructing the criminal justice system, it did not reflect a "thwart[ing of] the judicial process to avoid prosecution" within the meaning of section 110-1(f) of the Code (725 ILCS 5/110-1(f) (West 2022)), as that phrase specifically referred to a defendant's willful avoidance of prosecution by failing to appear in court or engaging in other similar conduct. *Sims*, 2024 IL App (4th) 231335-U, ¶ 28. The reviewing court concluded that the trial court erred in relying on the defendant's attempts to flee from the police in making a threshold determination of whether the defendant posed a high risk of willful flight. *Id.* ¶ 30.

¶ 21    The defendant also relies on *People v. Perez*, 2024 IL App (4th) 231335-U. In that case, the defendant appealed the trial court's order granting the State's petition to detain him on the basis that he posed a high risk of willful flight. *Id.* ¶ 9. In reversing the trial court, the reviewing court determined that the trial court had not considered the proper statutory criteria. The reviewing court noted that "willful flight" was defined in section 110-1(f) of the Act (725 ILCS 5/110-1(f) (West 2022)). *Id.* ¶ 12. The reviewing court further stated:

"Besides this definition, the only other guidance the Code gives to courts for evaluating 'willful flight' is in section 110-3(c), which tells us 'a nonappearance in court cured by an appearance in response to a summons shall not be considered as evidence of future likelihood of appearance in court' for purposes of willful flight risk assessment. 725 ILCS 5/110-3(c) (West 2022). From these two sections, we glean that courts can only consider recurring, uncured failures to appear as evidence for a high likelihood of willful flight under the Code. Here the record indicates defendant failed to appear only once, on October 3,

2023, yet the court considered it as a 'condition' in the willful flight analysis. We hold the court improperly considered defendant's isolated nonappearance as evidence of willful flight." *Id.*

The reviewing court noted that the trial court was required to first determine whether the defendant posed a high likelihood of willful flight and, if the defendant did post such a risk, was then required to address whether there were any conditions or combination of conditions that could mitigate the risk of willful flight. *Id.* ¶ 15. The reviewing court thus reversed the trial court's decision finding that the defendant posed a flight risk because the trial court failed to articulate how any of the evidence in the case proved that the defendant intended to thwart the judicial process to avoid prosecution. *Id.*

¶ 22　　In the present case, we also conclude that there was not sufficient evidence to support the trial court's determination that the defendant posed a high likelihood of willful flight to avoid prosecution. Under *Sims*, the trial court could not consider that the charged offenses included conduct involving eluding the police and evading arrest when making a threshold determination of whether the defendant poses a high likelihood of willful flight to avoid prosecution. *Sims*, 2024 IL App (4th) 231335-U, ¶ 28. Further, the trial court could not consider the one bond forfeiture warrant in McHenry County that was quashed because it was later cured. See 725 ILCS 5/110-3(c) (West 2022); see also *Perez*, 2024 IL App (4th) 230967-U, ¶ 12. This leaves only the single nonappearance in Tennessee in 2009, which also cannot be considered in a threshold determination of willful flight. *Perez*, 2024 IL App (4th) 230967-U, ¶ 12 (courts can consider only "recurring, uncured failures to appear as evidence for a high likelihood of willful flight under the Code"). The final basis articulated by the trial court for its determination of willful flight was that this case involved a 25-count complaint and it could foresee someone "not wanting to have to deal with

this." However, to justify pretrial detention, the Act requires clear and convincing proof of specific articulable facts of the case, not generalities about the nature or number of the criminal charges. See 725 ILCS 5/110-6.1(f)(7) (West 2022) (noting the decisions regarding pretrial detention must be individualized); see also *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 ("more is required" to overcome a defendant's presumed eligibility for release than to focus on the nature of the criminal charge alone).

¶ 23    Moreover, the record includes substantial evidence that the defendant did not pose a high likelihood of willful flight to avoid prosecution. The record shows that the defendant had a lengthy criminal history in Illinois dating back to 1995. Other than the bond forfeiture warrant, which was quashed within a week, the record does not indicate that the defendant ever failed to appear for a court date in Illinois. Further, the record shows that while in Wisconsin the defendant waived an extradition hearing and signed extradition papers, thus evidencing an intent to appear in McHenry County to face the charges against him in this case. Finally, the record indicates that the defendant had family in McHenry County and that he had lived here for the last 20 years. Accordingly, under the circumstances in this case, the trial court's determination that the defendant posed a high likelihood of willful flight was against the manifest weight of the evidence.

¶ 24    In so ruling, we note that the defendant's second contention on appeal is that the State failed to prove that there were no conditions or combination of conditions that could mitigate the risk of willful flight, as required by section 110-6.1(e)(1)(3) of the Code (725 ILCS 5/110-6.1(e)(1)(3) (West 2022)). We agree. While the State's petition for detention requested certain conditions of release should the trial court deny its petition, the State never argued at the detention hearing that there were no conditions or combination of conditions that could mitigate the defendant's risk of willful flight. Further, the trial court's written order did not include a written

finding summarizing why less restrictive conditions would not prevent the defendant's willful flight from prosecution as required by section 110-6.1(h)(1) (*id.* § 110-6.1(h)(1)). Thus, although the defendant's second contention has merit, we need not remand this case for the trial court to address conditions of release in light of our holding that the trial court's threshold determination of willful flight was erroneous.

¶ 25                                        III. CONCLUSION

¶ 26    For the reasons stated, we reverse the judgment of the circuit court of McHenry County.

¶ 27    Reversed.

¶ 28    JUSTICE HUTCHINSON, specially concurring.

¶ 29    I agree with my colleagues that the detention order in this case must be reversed, but I arrive at that conclusion on much narrower grounds. In making its findings, the circuit court said very little that was specific to this defendant, and its written order contained no additional information. Taking them together, the circuit court's findings were insufficient to explain defendant's pretrial detention. See *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶¶ 15-20.

¶ 30    I disagree with the majority's adoption of the unpublished decisions in *People v. Sims*, 2024 IL App (4th) 231335-U, and *People v. Perez*, 2024 IL App (4th) 231335-U. In my view, both decisions are incorrect, as they misinterpret the statutory authority. "Willful flight" is defined as "intentional conduct with a purpose to thwart the judicial process to avoid prosecution." 725 ILCS 5/110-1(f) (West 2022). The statute goes on to explain how courts *may* construe prior missed court dates, but it does not categorically forbid a court from assessing whether the present offense demonstrates a high likelihood of willful flight. If that reading were somehow doubtful, then I would turn to the canon that instructs us to avoid absurd results. Here, defendant stated that he knew his license was suspended and did not want to be arrested. He then fled from Spring Grove,

Illinois to Kenosha, Wisconsin, crossing multiple jurisdictions and endangering himself and others. His conduct was egregious, and it is difficult to imagine a more vivid example of conduct designed to thwart the judicial process to avoid prosecution. I do not believe the Act required the circuit court judge to exclude defendant's blatant act of willful flight from its consideration.

¶ 31    Although the State did not proceed on dangerousness grounds, running from the police in a motor vehicle is an inherently dangerous act. It is also obvious evidence of willful flight. Because I believe the circuit court's findings were insufficient, I concur in the result, but that does not mean the circuit court could not have determined defendant's detention was justified with a more thorough explanation of its reasoning.