2024 IL App (1st) 240592-U

No. 1-24-0592B

Third Division
May 28, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| | ) | No. 24110108901 |
| v. | ) ) | The Honorable |
| KIARA SIMMONS, | ) ) | David Kelly, Judge Presiding. |
| Defendant-Appellant. | ) ) | |

PRESIDING JUSTICE REYES delivered the judgment of the court.
Justice Lampkin concurred in the judgment.
Justice Van Tine specially concurred.

**ORDER**

¶ 1      *Held:*   The circuit court's pretrial detention order is affirmed, where (1) defendant did not challenge the circuit court's findings as to her dangerousness and (2) the circuit court properly determined that defendant posed a high risk of willful flight from prosecution and that no conditions could mitigate that risk.

¶ 2      Defendant Kiara Simmons appeals from the circuit court's order detaining her before trial, pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Acts 101-652 and 102-1104 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). On appeal, defendant contends that the

State failed to establish that she posed a risk of willful flight and that there were no pretrial conditions which could mitigate such a risk. For the reasons that follow, we affirm the circuit court's order.

¶ 3                                    BACKGROUND

¶ 4        On February 26, 2024, defendant was charged by felony complaint with seven charges, including one count of armed robbery (720 ILCS 5/18-2(a)(2) (West 2022)), one count of aggravated possession of a stolen vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), four counts of aggravated fleeing or attempting to elude a peace officer (625 ILCS 5/11-204.1(a)(3), (a)(4) (West 2022)), and one count of aggravated reckless driving (625 ILCS 5/11-503(a)(1), (c) (West 2022)), and also received a ticket for leaving the scene of an accident causing personal injury or death (625 ILCS 5/11-401(a) (West 2022)), all stemming from an incident occurring on February 24, 2024. The State filed a petition for pretrial detention, alleging that (1) the proof was evident or the presumption was great that defendant had committed a detainable offense, namely, armed robbery, (2) defendant both posed a real and present threat to the safety of any person or persons or the community and had a high likelihood of willful flight to avoid prosecution, and (3) no condition or combination of conditions could mitigate those risks.

¶ 5        The parties came before the circuit court for a hearing on the State's petition and the State's proffer established that, at approximately 3:40 p.m. on February 24, 2024, police were called to a location on the 6600 block of South California Avenue in Chicago. Upon arrival, they spoke with the victim, who informed them that he had come to the address to pick up defendant, whom he knew as "KeKe," and drive her to work at her request. When he arrived, defendant, who was accompanied by an unknown male individual, pointed a black semiautomatic firearm at his face and demanded the keys to his vehicle, a black Subaru. The victim handed defendant

the keys, and defendant and the unknown male individual left in the vehicle, with defendant driving.

¶ 6    Officers searched the area, and located a black Subaru on the road approximately six blocks away, which appeared to be driven by defendant; the officers observed that defendant had "bright blonde hair." The officers immediately attempted to make a traffic stop by activating their lights and sirens, but defendant ignored them and sped away, driving at a high rate of speed onto the Indiana Toll Road, with the police following. At one point during their pursuit, officers observed the vehicle slowing down, then an unknown African-American male individual threw a firearm out of the passenger-side window and onto the highway. The firearm, which was a 9-millimeter semiautomatic handgun, was ultimately recovered by police. After the firearm was thrown from the vehicle, the vehicle slowed, then made a U-turn and drove in the opposite direction, into oncoming traffic on the highway. At that point, the officers terminated their pursuit due to the danger of the situation.

¶ 7    At approximately 11 p.m. the same night, patrol officers observed the Subaru on the near west side of Chicago, with defendant behind the wheel. The officers recognized the vehicle and defendant, and activated their lights and sirens. Defendant again fled, leading the officers on a high-speed chase on I-290, which lasted 30 minutes and reached speeds in excess of 100 miles per hour. Defendant exited the highway at Western Avenue, traveling approximately 40 miles per hour, and struck another vehicle, totaling both vehicles and injuring the driver. Defendant then fled on foot, running into a nearby apartment building. Officers chased defendant on foot, ultimately detaining her and placing her into custody. The victim of the armed robbery identified defendant in a photo array, as did both sets of responding officers involved in the chases.

¶ 8        In addition to the proffer as to the events of February 24, the State set forth the details of defendant's prior criminal history. Specifically, at the time of her arrest in the instant case, defendant was facing two pending felonies involving burglary and possession of a stolen motor vehicle. Defendant had been released from police custody in that case on November 27, 2023, and missed four court dates; an arrest warrant had been issued on January 31, 2024, for her failure to appear in court. Prior to her arrest in that case, defendant had no criminal history apart from a 2020 domestic battery arrest which was ultimately stricken.

¶ 9        Defendant's pretrial services public safety assessment returned a score of three (of six) for "new criminal activity" and a four (of six) for "failure to appear," and recommended "maximum conditions" if released.

¶ 10        In response, defense counsel contended that despite the State's proffer, the police reports did not include the detail as to which individual was holding the firearm, which raised questions as to the reliability of that information. Counsel also pointed to defendant's limited criminal history, noting that she had never been subjected to electronic monitoring or any other conditions, and disputed whether defendant had, in fact, missed her court dates. Counsel also argued that her fleeing from police in the instant case did not suggest that she would fail to appear at future court hearings.

¶ 11        After considering the parties' arguments, the circuit court entered an order granting the State's petition for pretrial detention. The circuit court found that the State had shown, by clear and convincing evidence, that the proof was evident or the presumption was great that defendant had committed a detainable offense under section 110-6.1(a) of the Code, namely, armed robbery, and that defendant posed a real and present threat to the safety of the community. The circuit court noted that defendant was identified three separate times—by the

4

victim, who knew her previously, and by the two sets of officers—and that the firearm allegedly used in the armed robbery was, in fact, recovered after being thrown from the vehicle defendant was driving. The circuit court observed that defendant's actions in driving in the wrong direction on the highway demonstrated her "reckless disregard for [the] safety and [the] well-being" of individuals traveling on the road, which was later followed by a high-speed chase on I-290 which ultimately injured an innocent driver.

¶ 12     The circuit court also found that the State had established that there was a high likelihood of willful flight to avoid prosecution, as defendant led police on high-speed chases when they attempted to effectuate a vehicle stop on two separate occasions. While the circuit court noted that fleeing arrest was not, in itself, proof that a defendant would avoid prosecution, it nevertheless found that such behavior could be considered in determining the risk of willful flight.

¶ 13     Finally, the circuit court determined that, based on the above findings, there was no condition or combination of conditions which could mitigate either defendant's threat to the safety of the community or her risk of willful flight. While the circuit court considered the mitigating evidence presented by the defense, as well as defendant's lack of criminal history, it ultimately concluded that there were no appropriate conditions available. The circuit court noted that defendant had failed to appear in court in her pending case, despite ample opportunity to do so, and that the officers' pursuit in the instant case culminated in defendant fleeing on foot, further demonstrating her likelihood of flight.

¶ 14     The circuit court further observed that pretrial release conditions, such as electronic monitoring or home confinement, required defendant to be a "willing participant" to be effective. The circuit court, however, found that it "does not have any confidence" that

defendant would be willing to abide by such restrictions, based on the seriousness of the offense and defendant's conduct. The circuit court therefore ordered defendant to be detained and remanded to the custody of the Cook County sheriff pending trial.

¶ 15                                                    ANALYSIS

¶ 16        On appeal, defendant contends that the State failed to establish that she posed a risk of willful flight and that there were no pretrial conditions which could mitigate such a risk. The Act provides that a defendant may be denied pretrial release if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption is great that the defendant has committed a qualifying detainable offense, (2) the defendant poses a real and present threat to the safety of any person or persons or of the community, and (3) no condition or combination of conditions can mitigate the threat to the safety of any person or persons or of the community. 725 ILCS 5/110-6.1(e) (West 2022). In addition, the Act allows for the pretrial detention of a defendant if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption is great that the defendant has committed a qualifying detainable offense, (2) the defendant has a high likelihood of willful flight to avoid prosecution, and (3) no condition or combination of conditions can mitigate the defendant's willful flight. *Id.* § 110-6.1(a)(8), (e).

¶ 17        In the case at bar, the circuit court found defendant eligible for detention both (1) due to defendant's threat to the safety of the community and (2) due to her likelihood of willful flight to avoid prosecution. Defendant, however, does not challenge the circuit court's findings with respect to the first basis for detention. We therefore may affirm the circuit court's pretrial detention order on this basis alone. See, *e.g.*, *People v. Benford*, 2023 IL App (4th) 231011-U, ¶ 16 (considering dangerousness and flight as separate bases for pretrial detention); *People v.*

*Page*, 2023 IL App (1st) 232012-U, ¶ 23 (describing dangerousness and flight as alternative bases for detention).

¶ 18      Even considering defendant's argument concerning flight, we, however, find the circuit court's pretrial detention order appropriate. On appeal, defendant does not dispute that armed robbery is a detainable offense under section 110-6.1(a) of the Code (see 725 ILCS 5/110-6.1(a)(1.5) (West 2022)), nor does she challenge the circuit court's findings that the proof is evident or the presumption is great that she committed the offense. Instead, she claims that the State failed to establish that she posed a risk of willful flight and that there were no pretrial conditions which could mitigate such a risk.

¶ 19      The question of whether defendant posed a risk of willful flight involves a finding of fact, which we review under the manifest weight of the evidence standard of review. See *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 32 (applying manifest weight of the evidence standard of review to determine whether the record contains facts to support the circuit court's findings in pretrial detention proceeding); *People v. McDonald*, 2024 IL App (1st) 232414, ¶ 38 (a circuit court's finding that the defendant has a high likelihood of willful flight to avoid prosecution will not be reversed unless it is against the manifest weight of the evidence). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *Saucedo*, 2024 IL App (1st) 232020, ¶ 32.

¶ 20      The question of whether there are any pretrial conditions available which could mitigate the risk, however, involves the circuit court's reasoning and opinion, as it requires the circuit court to exercise a degree of discretion in determining whether any less-restrictive means would effectively mitigate the risk posed by defendant. *Id.* ¶ 36; *People v. Schulz*, 2024 IL App

(1st) 240422, ¶ 19. We therefore review such a question under an abuse of discretion standard of review. *Id.* "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the circuit court." (Internal quotation marks omitted.) *Schulz*, 2024 IL App (1st) 240422, ¶ 19.

¶ 21        The Code defines "willful flight" as:

"[I]ntentional conduct with a purpose to thwart the judicial process to avoid prosecution. Isolated instances of nonappearance in court alone are not evidence of the risk of willful flight. Reoccurrence and patterns of intentional conduct to evade prosecution, along with any affirmative steps to communicate or remedy any such missed court date, may be considered as factors in assessing future intent to evade prosecution." 725 ILCS 5/110-1(f) (West 2022).

¶ 22        Courts considering whether a defendant poses a risk of willful flight have found that a defendant evading arrest does not suffice to establish that the defendant poses a risk of willful flight under the Code, as section 110-6.1(a)(8) requires the State to establish that the defendant "has a high likelihood of willful flight to avoid *prosecution*" (emphasis added) (*id.* § 110-6.1(a)(8)), not merely arrest. See, *e.g.*, *People v. Quintero*, 2024 IL App (1st) 232129-U, ¶ 22. Such conduct, however, may be considered when determining the availability of any conditions of pretrial release. See *id.* (citing 725 ILCS 5/110-5(a)(5) (West 2022)). Additionally, courts have found that a single failure to appear in court, cured by an appearance in response to a summons, may not be used as evidence of willful flight. See *People v. Perez*, 2024 IL App (4th) 230967-U, ¶ 12 (citing 725 ILCS 5/110-3(c) (West 2022)). "[R]ecurring, uncured failures to appear," however, may be so considered. *Id.*

¶ 23    In this case, the State's proffer included evidence that defendant had missed several court dates on her pending charges and that a warrant for her arrest had been issued on January 31, 2024, nearly a month prior to the incident at issue here. The circuit court found that defendant had "ample opportunity" to appear in court, yet failed to do so, even after the issuance of a warrant. We agree with the circuit court that defendant's repeated failures to appear in court represent the type of "recurring, uncured failures to appear" (*id.*) which support a finding that defendant poses a high risk of willful flight from prosecution. We therefore cannot find that the circuit court's finding was against the manifest weight of the evidence.

¶ 24    We similarly agree with the circuit court's determination that there are no conditions which could mitigate the risk of defendant's willful flight. In addition to her failure to appear in court, defendant's conduct in the instant case included three attempts to evade arrest—two in the stolen vehicle and one on foot. These efforts involved extremely dangerous activity, including traveling at high speeds on the highway, driving into opposing traffic, and ultimately colliding with an innocent driver. We cannot find that the circuit court abused its discretion in determining that no available conditions could mitigate the risk of defendant's willful flight, where her conduct demonstrated the lengths to which she was willing to go to evade arrest, and therefore affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 25                              CONCLUSION

¶ 26    For the reasons set forth above, we affirm the circuit court's order granting the State's petition for pretrial detention, as defendant did not challenge the circuit court's findings as to her dangerousness and the circuit court properly found that defendant posed a high risk of willful flight from prosecution.

¶ 27    Affirmed.

9

¶ 28        VAN TINE, J., specially concurring:

¶ 29        I concur in the outcome of this appeal. However, in my view, only the abuse of discretion standard of review applies.

¶ 30        The majority applies the manifest weight of the evidence standard to the trial court's conclusion about whether defendant poses a risk of willful flight because that determination "involves a finding of fact." *Supra* ¶ 19. A trial court's assessment that a defendant presents a flight risk is not a finding of fact. A finding of fact is a trial court's conclusion about what happened *in the past* and involves weighing witness testimony, drawing inferences from evidence, and making credibility determinations. See, *e.g.*, *People v. Qurash*, 2017 IL App (1st) 143412, ¶ 37 (determination about the language and tone an officer used is a finding of fact); *People v. Roberts*, 374 Ill. App. 3d 490, 497-98 (2007) (determination about what occurred after a traffic stop would be a finding of fact); *People v. Lewis*, 363 Ill. App. 3d 516, 530-31 (2006) (whether a responding officer examined the defendant's vital signs is a finding of fact). By contrast, a trial court's belief that defendant will flee prosecution *in the future* if she is not detained is not a determination about what actually happened in a given event that has already occurred. It is a prediction, based on the defendant's past behavior, about what could happen in the future. We should review the trial court's assessment that defendant presents a flight risk for an abuse of discretion because it is an exercise of judgement, not a finding of fact.

¶ 31        Additionally, applying the manifest weight of the evidence standard is inappropriate because this pretrial detention hearing, like most pretrial detention hearings, did not involve

evidence.[1] Evidence consists of witness testimony, documents, physical exhibits, stipulations, and judicially noticed facts. Illinois Pattern Jury Instructions, Criminal, No. 1.01 (approved July 18, 2014). At most pretrial detention hearings, the parties do not present such evidence. Instead, the parties make proffers and representations to the court (725 ILCS 5/110-6.1(f)(2) (West 2022)), which the court generally accepts as true without adversarial testing such as cross-examination. That is what occurred in this case. Moreover, the Pretrial Fairness Act states that the Rules of Evidence do not apply at pretrial detention hearings (*id.* § 110-6.1(f)(5)), suggesting that the legislature does not view pretrial detention hearings as involving evidence. Because the parties generally do not introduce evidence at pretrial detention hearings, the appellate records that those hearings produce are sparse. On review, there is usually no evidence for us to weigh. The manifest weight standard applies when the trial court hears actual evidence like live witness testimony, as it would at a hearing on a motion to suppress evidence. See, *e.g.*, *People v. Valle*, 405 Ill. App. 3d 46, 57-58 (2010).

¶ 32     I acknowledge that the Act imposes a burden of clear and convincing "evidence" on the State. 725 ILCS 5/110-6.1(e) (West 2022). However, the existence of a clear and convincing evidence burden in the trial court does not automatically require manifest weight of the evidence review on appeal. In other areas of the law, we review the trial court's ruling for an abuse of discretion even though one of the parties had to prove a certain proposition by clear and convincing evidence. See, *e.g.*, *Roberson v. Belleville Anesthesia Associates, Ltd.*, 213 Ill. App. 3d 47, 52 (1991) (party challenging validity of settlement agreement must prove by clear and convincing evidence that settlement was not in good faith, but trial court's ruling on that

---

[1]I say "most" because some pretrial detention hearings involve video recordings from sources such as police body cameras and surveillance cameras. Such video recordings could potentially be admissible evidence, although they are generally not formally introduced as evidence at pretrial detention hearings.

issue is reviewed for abuse of discretion); *In re Marriage of Ryman*, 172 Ill. App. 3d 599, 607 (1988) (contributions to marital property in divorce must be proved by clear and convincing evidence, but trial court's attempt to offset marital estate's right to reimbursement for those contributions is reviewed for abuse of discretion). Therefore, in my view, abuse of discretion review is appropriate in pretrial detention appeals.

¶ 33    However, the result of this case would be the same under either standard, which is why I concur with the outcome.