2026 IL App (1st) 260045B-U

No. 1-26-0045B

Fifth Division
April 14, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| People of the State of Illinois, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2025CR1079501 |
| | ) | |
| Joshua Perry, | ) | The Honorable |
| | ) | Charles P. Burns |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WILSON delivered the judgment of the court.
Justices Mikva and Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The judgment of the circuit court is affirmed. The Pretrial Fairness Act authorizes pretrial detention where the defendant committed a qualifying offense (other than a Class 4 felony) and, as here, poses a high likelihood of willful flight to avoid prosecution.

¶ 2     This appeal arises under the Pretrial Fairness Act (Act), codified in article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110 *et seq*. (West 2024)). Defendant, Joshua Perry, is charged with escape of a felon from a penal institution. See 720 ILCS 5/31-6(a) (West 2024). The circuit court granted the State's petition to deny pretrial release. Perry appeals, arguing the court erred in finding that escape was a detainable offense under Code section 110-6.1(a)(6)-

(a)(6.5) and that he posed a high likelihood of willful flight under Code section 110-6.1(a)(8). For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On September 17, 2025, defendant-appellant Joshua Perry was arrested and charged with three counts of escape, each a Class 2 felony. Perry was arraigned on October 1, 2025.

¶ 5    On October 15, 2025, plaintiff-appellee the People of the State of Illinois (State) filed a petition for pretrial detention under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2024)), as amended by the Act. The State filed a second petition on October 23, 2025. At both times, Perry was in Illinois Department of Corrections (IDOC) custody for a parole violation, as detailed below. He was released on mandatory supervised release on December 10, 2025, and the detention hearing was held on December 16, 2025.

¶ 6    In its petition, the State alleged that the proof was evident and the presumption great that Perry committed a detainable offense—specifically, an "other qualifying offense" (Code section 110-6.1(a)(6)–(6.5)) and "willful flight" (Code section 110-6.1(a)(8))—that his pretrial release posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case, and that no less restrictive conditions could mitigate that risk. 725 ILCS 5/110-6.1(a)(6)-(6.5), 110-6.1(e)(3) (West Supp. 2025).

¶ 7    At the hearing, the State proffered the following facts. On November 19, 2024, Perry was residing at the IDOC Crossroads Adult Transitional Center while on parole for four separate felony matters. Facility staff had discovered that Perry possessed both "K2," a synthetic drug, as well as alcohol in his shampoo bottle in violation of his parole conditions and informed him that he would be returned to Stateville Correctional Center. Sometime thereafter, a correctional officer arrived to escort him to the Stateville Northern Reception Center for revocation processing. After Perry's

waist shackles were removed, he jumped from a second-story window and fled the facility on foot. The State alleged that Perry used force in his escape which resulted in injuries to department of corrections personnel. He remained at large until December 11, 2024, when he was located and taken into custody in Peoria, Illinois.

¶ 8     The State also proffered Perry's criminal history. Around 2020 he was charged in DuPage County with unlawful possession of cannabis with intent to deliver. After posting bond, he failed to appear for court dates in February and March 2021 and was charged with violation of bail bond (VOBB). He was apprehended in April 2021, posted bond again, and again failed to appear—until he was later arrested in Peoria County on charges of possession of a controlled substance and aggravated unlawful use of a weapon. Ultimately, the DuPage County court sentenced him to six years' imprisonment on the VOBB conviction, concurrent with a 42-month sentence for the cannabis offense. In Peoria County he received concurrent probation terms for aggravated unlawful use of a weapon and possession of a controlled substance; both probations were later terminated without designation in 2024. The State also noted a 2017 conviction for possession of a controlled substance, for which Perry received section 410 probation under the Illinois Controlled Substances Act (720 ILCS 570/410 (West 2016)), terminated satisfactorily, and a misdemeanor conviction for resisting a peace officer, for which he received supervision that was terminated unsatisfactorily.

¶ 9     In response, Perry's counsel argued that escape is not an enumerated detainable offense under section 110-6.1(a)(1)–(7) of the Code and that the alleged conduct did not amount to "willful flight from prosecution" as defined under section 110-1(f) of the Code (725 ILCS 5/110-1(f) (West 2024)) because Perry was not evading prosecution but rather "evading an increase in his status while serving a sentence." In mitigation, counsel represented that Perry had been released to

mandatory supervised release on December 10, 2025, after fully serving the custodial portions of his prior sentences and had complied with all parole-reporting requirements since then. He voluntarily appeared for the December 16 hearing—even after traveling roughly 150 miles to Peoria the night before—despite having no court-imposed supervision or electronic monitoring and knowing he faced possible detention. Counsel requested that the court impose conditions of release rather than order detention, arguing that existing parole supervision already provided around-the-clock monitoring sufficient to mitigate any risk.

¶ 10    On December 17, 2025, the circuit court issued its ruling and granted the State's petition. The court's written order, entered the same day, made findings under two independent grounds for detention. First, the court found by clear and convincing evidence that the proof was evident and the presumption great that Perry had committed a detainable offense listed in section 110-6.1(a)(1)–(7) of the Code; that Perry posed a real and present threat to the safety of the community; and that no condition or combination of conditions set forth in section 110-10(b) of the Code (725 ILCS 5/110-10(b) (West 2024)) could mitigate that threat. In making its finding, the court cited Perry's "continued failure to appear and felony background as well as facts of the underlying case." Second, the court found by clear and convincing evidence that the proof was evident and the presumption great that Perry had a high likelihood of willful flight to avoid prosecution under section 110-6.1(a)(8) of the Code. The court based its finding on Perry's escape from the transitional facility by "jumping from a second floor window *** and absconding for multiple weeks"; and that no condition or combination of conditions could mitigate that risk given his "demonstrated continued failure to comply with court conditions."

¶ 11    In reaching its findings, the court cited *People v. Rios*, 2025 IL App (1st) 250950, for the proposition that "an individual can be detained on [the willful flight] prong if there is credible

4

evidence that would indicate that the defendant would in fact meet that criteria." Applying that standard, the court concluded that Perry's act of escape, combined with his documented history of absconding, satisfied the willful flight ground for detention. Perry was ordered detained and remanded to the custody of the Cook County Sheriff.

¶ 12    On January 5, 2026, Perry filed a motion for relief under the Act pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. April 15, 2024) before the circuit court. At the hearing on the motion, defense counsel renewed her argument that escape is not enumerated among the offenses specifically listed in sections 110-6.1(a)(6)-(6.5) of the Code (725 ILCS 5/110-6.1(a)(6)-(6.5) (West Supp. 2025)) and is therefore not a qualifying offense for safety-based detention under sections 110-6.1(a)(1)-(7). Counsel further argued that the circuit court made no additional findings that would bring escape within any other paragraph of sections 110-6.1(a)(1)-(7) of the Code, and that without such a finding, the safety-based detention order lacked a proper statutory basis. Counsel further argued that *People v. Quintero*, 2024 IL App (1st) 232129-U, is persuasive authority for the proposition that Perry's flight from parole supervision did not constitute willful flight from prosecution within the meaning of section 110-6.1(a)(8) and section 110-1(f) of the Code.

¶ 13    On January 5, 2026, the circuit court denied Perry's motion for relief; Perry filed a timely notice of appeal that same day. Perry has not filed a supporting memorandum, choosing to stand on his motion for relief, as he may. See Ill. S. Ct. R. 604(h)(7) (eff. April 15, 2024). Thus, in resolving this appeal, we have considered the following documents submitted pursuant to Rule 604(h): Perry's notice of appeal, the State's response memorandum, the certified common law record, and the reports of proceedings from the detention hearings held on December 16 and 17, 2025, and the January 5, 2026, hearing on Perry's motion for relief.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Perry contends that (1) the State did not prove by clear and convincing evidence that escape is a detainable offense under sections 110-6.1(a)(6)–(6.5) of the Code (725 ILCS 5/110-6.1(a)(6)-(6.5) (West Supp. 2025)), and that the circuit court made no factual findings sufficient to support detention under any other qualifying offense provision within sections 110-6.1(a)(1)–(7) (725 ILCS 5/110-6.1(a)(1)-(7) (West Supp. 2025)); (2) even if escape were detainable, the court made no individualized finding that Perry poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case; and (3) the State did not prove by clear and convincing evidence that Perry has a high likelihood of willful flight to avoid prosecution under section 110-6.1(a)(8) (725 ILCS 5/110-6.1(a)(8) (West 2024)).

¶ 16    The Act presumes every defendant eligible for release and permits detention only in the limited circumstances the statute specifies. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). However, upon verified petition by the State, the trial court may deny a defendant pretrial release if the State establishes that the charged offense is eligible for detention and then proves that (1) the proof is evident or the presumption great that the defendant committed an offense that qualifies him for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat. 725 ILCS 5/110-6.1(e) (West 2024).

¶ 17    The State must prove each and every one of these three facts by clear and convincing evidence. *Id*. Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal

quotation marks omitted.) *In re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. If the State fails to carry its burden on any of these three facts, the presumption of release remains, and detention is unlawful. 725 ILCS 5/110-6.1(e) (West 2024).

¶ 18 Where, as here, the parties proceeded solely by proffer or submission of documentary evidence at a pretrial detention hearing, this court may conduct its own independent review of the proffered evidence and, thus, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 44; *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009).

¶ 19 A. Detention pursuant to sections 110-6.1(a)(6)–(6.5) of the Code

¶ 20 Perry argues the State did not show by clear and convincing evidence that he committed an eligible offense under sections 110-6.1(a)(6)–(6.5) (725 ILCS 5/110-6.1(a)(6)-(6.5) (West Supp. 2025)). Specifically, the State's petition alleged that Perry committed an "other qualifying offense" within those subsections. Perry maintains that escape, the charged offense here, is not among the offenses enumerated there and that the circuit court made no additional findings that escape was detainable under any other portion of sections 110-6.1(a)(1)-(7) (725 ILCS 5/110-6.1(a)(1)-(7) (West Supp. 2025)). We agree.

¶ 21 Perry's argument presents a question of statutory construction, which we review *de novo*. *People v. Taylor*, 2023 IL 128316, ¶ 45. Our "fundamental objective in addressing issues of statutory construction is to ascertain and give effect to the legislature's intent." *Id*.

¶ 22 The Code provides that a court may impose pretrial detention "only if a person is charged with an offense listed in section 110-6.1 and after the court has held a hearing under Section 110-6.1." 725 ILCS 5/110-2(a) (West 2024). Section 110-6.1(a) lists the scenarios that qualify a defendant for pretrial detention. *Id*. § 110-6.1(a)(1)-(8). Relevant here, section 110-6.1(a)(6)-(6.5) authorizes detention for certain specifically enumerated offenses where the State further alleges

that the defendant's release poses a real and present threat to the safety of any person or the community. *Id*. § 110-6.1(a)(6)-(6.5).

¶ 23    Escape is not one of the enumerated detainable offenses listed in sections 110-6.1(a)(6)-(6.5) of the Code. We will not read escape into a statutory list from which the legislature excluded it. See *Commonwealth Edison Co. v. Illinois Prop. Tax Appeal Bd.*, 378 Ill. App. 3d 901, 916 (2008). Accordingly, the State's petition—so far as it relied on Code sections (a)(6)-(6.5)—failed to establish by clear and convincing evidence a safety-based ground for detention.

¶ 24    B. Detention pursuant to section 110-6.1(a)(8) of the Code

¶ 1    In its petition, the State also sought detention under section 110-6.1(a)(8) of the Code, which permits detention where a defendant has "a high likelihood of willful flight to avoid prosecution." 725 ILCS 5/110-6.1(a)(8) (West 2024). Perry argues the State failed to prove that risk by clear and convincing evidence. At the detention hearing, he did not dispute the State's factual proffer, but argued that escape is not a detainable offense and that his conduct did not amount to willful flight. Relying on *People v. Quintero*, 2024 IL App (1st) 232129-U[1], and *People v. Sims*, 2024 IL App (4th) 231335-U, he contends that flight from law enforcement or correctional custody does not, by itself, constitute willful flight from prosecution. Applying that reasoning, Perry maintains that his act of jumping from a second-floor window to avoid being returned to IDOC was flight from an administrative parole-revocation matter, and thus from IDOC custody, not from any judicial proceeding. He therefore argues that this conduct could not support detention under section 110-6.1(a)(8) of the Code (725 ILCS 5/110-6.1(a)(8) (West 2024)). He further

---

[1] In his notice in lieu of a Rule 604(h) memorandum, Perry cites *People v. Quintero*, 2024 IL App (1st) 20928, which does not correspond to a valid reporter citation. In the interest of judicial efficiency, we construe Perry's citation as a reference to *People v. Quintero*, 2024 IL App (1st) 232129-U.

contends that his prior nonappearances were isolated and cannot be considered, and that parole supervision and electronic monitoring are sufficient to address any risk short of detention.

¶ 25    The State responds that Perry's escape charges are qualifying Class 2 felonies and that the record amply supports the willful flight finding. The State emphasizes Perry's repeated failures to appear, his conviction for VOBB, his history of absconding after release, and the fact that he physically escaped from lawful IDOC custody and remained at large for 23 days before being apprehended in another county. On similar reasoning it maintains that no condition or combination of conditions could mitigate the risk of flight. We agree.

¶ 26    The Code provides that the court may deny pretrial release only if "the person has a high likelihood of willful flight to avoid prosecution and is charged with: (A) Any felony described in subdivisions (a)(1) through (a)(7) of this Section; or (B) A felony offense other than a Class 4 offense." 725 ILCS 5/110-6.1(a)(8) (West 2024). When, as here, a petition is filed pursuant to section 110-6.1(a)(8) of the Code, the State has the burden of proving by clear and convincing evidence that (1) the proof is evident or presumption great that defendant committed a qualifying offense under section 110-6.1(a)(8), and (2) no condition or combination of conditions can mitigate the risk of defendant's "willful flight." *Id.* § 110-6.1(e)(1), (3). The Code defines "willful flight" as, "intentional conduct with a purpose to thwart the judicial process to avoid prosecution," and provides that while "isolated instances of nonappearance in court alone" are insufficient, "[r]eoccurrence and patterns of intentional conduct to evade prosecution *** may be considered as factors in assessing future intent to evade prosecution." 725 ILCS 5/110-1(f) (West 2024). We

review these questions *de novo*. *People v. Gutman*, 2011 IL 110338, ¶ 12; *Morgan*, 2025 IL 130626, ¶ 44.

¶ 27    The record supports the circuit court's determination. Perry is charged with three counts of escape, each a Class 2 felony, which qualifies as a detainable offense under section 110-6.1(a)(8)(B) of the Code (725 ILCS 5/110-6.1(a)(8) (West 2024)). The State's uncontested proffer established that Perry was in lawful IDOC custody at a transitional center when he was informed he would be returned to prison. After his restraints were removed in preparation for transport, he jumped from a second-floor window, fled the facility, and remained at large for 23 days before being apprehended in another county. The escape involved force that resulted in injury to correctional personnel. These facts, if credited, were sufficient to establish by clear and convincing evidence that the proof is evident and the presumption great that Perry committed a qualifying offense under section 110-6.1(a)(8), namely, that he "intentionally escape[d] from any penal institution or from the custody of an employee of that institution." 720 ILCS 5/31-6(a) (West 2024).

¶ 28    The record also supports the finding that Perry presented a "high likelihood of willful flight" under section 110-6.1(a)(8) of the Code. The State proffered that Perry had repeatedly failed to appear after posting bond in DuPage County, had been convicted of VOBB, had absconded a second time after reposting bond, and had been apprehended only after his arrest in another county on new charges. He also had a prior conviction for resisting a peace officer. While "isolated instances of nonappearance in court alone" are insufficient, section 110-1(f) expressly recognizes that "[r]eoccurrence and patterns of intentional conduct to evade prosecution *** may be considered as factors in assessing future intent to evade prosecution." 725 ILCS 5/110-1(f) (West 2024). The State's proffer showed far more than an isolated missed court appearance. When viewed

alongside Perry's custodial escape, his history reflects an escalating pattern of flight related conduct—from nonappearance, to absconding on bond, to physical escape from a correctional facility. Section 110-1(f) of the Code expressly permits a court to consider such conduct in making a willful flight determination. On this record, that pattern was probative of a future intent to evade prosecution and satisfied section 110-6.1(a)(8).

¶ 29 Perry's reliance on *Quintero* and *Sims* does not compel a different result. Those decisions explain that flight from police or custody, standing alone, does not automatically amount to willful flight from prosecution. See *Quintero*, 2024 IL App (1st) 232129-U, ¶ 22; *Sims*, 2024 IL App (4th) 231335-U, ¶ 28. But Perry's detention does not rest on that fact alone. Here, the circuit court had before it not only Perry's escape from IDOC custody, but also his broader history of failing to appear, absconding after release, and VOBB. In other words, the record showed more than mere flight from custody; it showed a pattern of conduct bearing directly on the likelihood that Perry would evade future prosecution.

¶ 30 Nor does *Rios* undermine the detention order. In *Rios*, the defendant cut off his court-ordered electronic-monitoring bracelet while on pretrial release in a pending case, and the court held that conduct supported a finding of willful flight. *Rios*, 2025 IL App (1st) 250950, ¶¶ 35-38. Perry's circumstances differ in that his escape occurred before this prosecution began. Even so, *Rios* remains instructive insofar as it recognizes that affirmative evasive conduct may properly support a willful flight finding. Here, Perry did not merely fail to report or miss a court date. According to the State's proffer, he physically fled lawful custody, used force in the course of that escape, caused injury to correctional personnel, escaped from a secure facility, and remained at large until law enforcement located him. Coupled with his repeated failures to appear and

conviction for VOBB, that conduct supports the conclusion that he posed a high likelihood of willful flight.

¶ 31    The State also met its burden under section 110-6.1(e)(3) of the Code when determining whether any condition or combination of conditions could mitigate the risk of his willful flight. On this point, the State's position is unusually strong. Perry escaped while subject to correctional supervision more restrictive than any pretrial condition the court could impose. His history further shows that he has not complied with bond conditions, court appearances, or parole conditions. The record establishes that the circuit court reasonably concluded that no condition or combination of conditions could mitigate the risk that Perry would flee. Electronic monitoring, reporting requirements, or home confinement all depend in substantial part on voluntary compliance, and Perry's history demonstrates repeated refusal to comply with legal supervision.

¶ 32    Although escape is not a detainable offense under sections 110-6.1(a)(6)-(a)(6.5), the record supports detention under section 110-6.1(a)(8). Perry is charged with qualifying Class 2 felonies; the proof is evident or the presumption great that he committed those offenses; and the State proved by clear and convincing evidence that he posed a high likelihood of willful flight to avoid prosecution and that no condition or combination of conditions could mitigate that risk. The detention order stands.

¶ 33                                III. CONCLUSION

¶ 34    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 35    Affirmed.