2024 IL App (1st) 240785-U

No. 1-24-0785B

Order filed June 13, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 241100583 |
| | ) | |
| DAVION BARNES, | ) | Honorable |
| | ) | David L. Kelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAN TINE delivered the judgment of the court.
Presiding Justice Reyes specially concurred.
Justice Lampkin specially concurred.

**ORDER**

¶ 1    *Held*:   We affirm the trial court's order granting the State's petition for pretrial detention over defendant's contentions that (1) the trial court erred in finding that no conditions of pretrial release would ensure defendant's appearance or prevent him from being charged with new crimes, (2) the State did not claim that defendant failed to complete parole or probation or that he had any bond forfeiture warrants in the past, and (3) the trial court failed to make an individualized finding that defendant would not comply with electronic monitoring.

¶ 2    Defendant Davion Barnes appeals the trial court's order granting the State's petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-1 *et seq.* (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act.[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    Defendant is charged with one count each of armed robbery (720 ILCS 5/18-2(a)(1) (West 2024)), aggravated battery (*id.* § 12-3.05(a)(5)), aggravated unlawful restraint (*id.* § 10-3.1(a)), solicitation of unlawful business (*id.* § 8-1), and manufacture or delivery of cannabis (720 ILCS 550/5(b) (West 2024)). The charges arise out of the alleged robbery of Oscar Quiroga at the Chicago Transit Authority (CTA) Red Line 47th Street stop on February 21, 2024.

¶ 5    The State filed a petition for pretrial detention pursuant to section 110-6.1(a)(1.5) of the Pretrial Fairness Act (725 ILCS 5/110-6.1(a)(1.5) (West 2022)), alleging that the proof is evident or the presumption great that defendant committed the forcible felony of armed robbery and that he poses a real and present threat to the safety of the community.

¶ 6    Pretrial Services' public safety assessment indicated that defendant had previously been convicted of a felony and included a "new violent criminal activity flag." In the assessment, defendant scored a 4 out of 6 in terms of "new criminal activity" and 2 out of 6 in terms of "failure

---

[1]The legislation has also been referred to as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act. Neither commonly known name is official, as neither appears in the Illinois Compiled Statutes or the public act.

to appear." Pretrial Services recommended "maximum conditions" if the trial court granted pretrial release.

¶ 7    The State proffered that at 7:05 a.m. on February 21, 2024, defendant approached Quiroga at the CTA Red Line 47th Street stop and offered to sell him cannabis. Quiroga agreed and took cash out of his pocket. Codefendant Joseph Austin then ambushed Quiroga from behind and placed him in a choke hold while defendant and two other co-offenders threatened to kill him.[2] Quiroga's cash fell to the ground and one of the co-offenders took it. While Austin pulled Quiroga to the ground and choked him, defendant and the two other co-offenders took Quiroga's two smartphones and a bag containing his wallet, a phone charger, and two sets of headphones. All four co-offenders struck Quiroga. Quiroga managed to break free, took out a knife, and moved toward Austin. One of the co-offenders gave defendant a firearm, which defendant brandished while telling Quiroga that he would not get his belongings back. Quiroga left and called 911. Police arrived and arrested defendant on a CTA train. Shortly thereafter, Quiroga identified defendant in a show-up. Police recovered one of Quiroga's smartphones from a trash can and his phone charger from one of the co-offenders. Defendant's arrest report, which is included in the record on appeal, states that police did not recover any firearms. The State indicated that CTA surveillance cameras recorded this incident in its entirety.

¶ 8    The State also proffered that defendant was convicted of aggravated robbery with a firearm in 2017 and sentenced to 13 years in prison, was convicted of robbery in 2014 and sentenced to three years in prison, and was convicted of robbery twice in 2012 and sentenced to three years in

---

[2]Defendant and Austin were both charged and appeared in court on the same day. One of the other co-offenders was arrested but was not present in court. The fourth co-offender, a woman, apparently was not arrested.

prison in both cases. Defendant was on parole for the 2017 aggravated robbery case at the time of this arrest.

¶ 9 Defendant proffered that he was 30 years old, lived with his fiancée, and supported two children. He attended high school and was unemployed at the time of this arrest. Defendant was "involved in the community with the Chicago outreach program, who helps with schools, housing, jobs and outreach [i]n the community" and attended church regularly.

¶ 10 The State argued that this arrest for aggravated robbery while defendant was on parole for aggravated robbery in the 2017 case showed that he would not comply with conditions of pretrial release. Defendant denied that the proof was evident or the presumption great that he committed these offenses because he had not yet reviewed the CTA surveillance video. Defendant acknowledged that he was on parole at the time of this incident but argued that his background included no other violations of parole, unsatisfactory terminations of probation, or failures to appear in court. He also contended that, aside from the 2017 aggravated robbery conviction, his convictions were 10 or more years old and therefore "remote." Defendant requested pretrial release with electronic monitoring.

¶ 11 The trial court granted the State's petition for pretrial detention. The court found that the proof was evident or the presumption great that defendant participated in the robbery and brandished a firearm. The court concluded that defendant posed a real and present threat to the community because he brandished a firearm on a CTA platform during the daytime and was on parole for aggravated robbery with a firearm at the time of these offenses. The court also inferred that defendant's "failure to appear" score was relatively low because he had spent most of his adult life in prison, *i.e.*, he had no choice but to appear for court dates. Finally, the court found that no

conditions of release could mitigate the threat that defendant posed to the community because committing aggravated robbery while on parole for aggravated robbery showed that defendant "ha[d] no desire or intention to follow any of the conditions of [his] mandatory supervised release, while being on parole." The court stated that it had no confidence that defendant would not rob other victims if he was granted pretrial release. The court also explained that electronic monitoring "is not fail proof. It is something that you can walk away from [and that] you can tamper with that strap. You can remove that strap."

¶ 12 Defendant timely appealed.

¶ 13                                    II. ANALYSIS

¶ 14 On appeal, Defendant contends that (1) the trial court erred in finding that no conditions of pretrial release would ensure his appearance or prevent him from being charged with new crimes, (2) the State made no proffer that he "failed to successfully complete parole, probation, or had any bond forfeiture warrants in his past," and (3) the trial court failed to make an individualized finding that defendant would not comply with electronic monitoring. We take these contentions from defendant's notice of appeal as he has chosen not to file a memorandum as allowed by Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024).

¶ 15 The Pretrial Fairness Act presumes that all defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Relevant here, the State may file a petition for pretrial detention when the proof is evident or the presumption great that the defendant committed a forcible felony and "the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(a)(1.5). The State must prove by clear and convincing evidence that (1) the proof is evident or the

presumption great that the defendant committed a detainable offense, (2) the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community, and (3) no condition or combination of conditions of pretrial release would mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e)(1)-(3). We review the trial court's pretrial detention ruling for an abuse of discretion. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33. An abuse of discretion occurs when the court's ruling is fanciful, arbitrary, or unreasonable, or where no reasonable person would agree with the court's position. *Bradford*, 2023 IL App (1st) 231785, ¶ 33.

¶ 16 We agree with the trial court's decision to deny defendant pretrial release. Defendant does not dispute that aggravated robbery is a forcible felony (see 725 ILCS 5/110-6.1(a)(1.5) (West 2022)), and, on appeal, he does not dispute the State's proffer as to the facts of this incident. Therefore, he does not contest the trial court's finding that the proof is evident or the presumption great that defendant committed aggravated robbery. Additionally, the trial court did not err by finding that defendant's pretrial release would pose a threat to the community and that no conditions of release would mitigate that threat. Defendant's criminal history amply supports those conclusions. Defendant has four prior convictions for robbery in 2017, 2014, and 2012, all of which resulted in prison sentences. The most recent conviction was for aggravated robbery with a firearm. Defendant was on parole in that case when he allegedly committed aggravated robbery with a firearm on a CTA platform during the daytime in this case. Altogether, the facts before the trial court supported the conclusion that defendant commits robberies when he is not in custody. If substantial prison time does not prevent defendant from committing robberies, we fail to see

how pretrial release with electronic monitoring would accomplish that goal. We also agree with the trial court that defendant's refusal to follow the conditions of parole suggests that he would not follow conditions of pretrial release. Pretrial detention is appropriate in this case.

¶ 17    Defendant's notice of appeal contends that the trial court "erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor." That language appears in section 110-6(a) and is what the State must show when it files a petition to *revoke* pretrial release. 725 ILCS 5/110-6(a) (West 2022). The State did not file a petition to revoke in this case. It filed a petition to deny pretrial release pursuant to section 110-6.1(a)(1.5).

¶ 18    Defendant also argues that "the [S]tate did not proffer that he failed to successfully complete parole, probation, or had any bond forfeiture warrants in the past" and "[h]e has completed such conditions successful in the past showing he can follow conditions set by the court." This argument strains credulity. There is no indication that defendant was ever on probation. Additionally, as the trial court explained, the primary reason defendant has not had any bond forfeiture warrants for failure to appear in court is because he has been in prison most of his adult life. And, most importantly, defendant was on parole for armed robbery when he allegedly committed this armed robbery. See *id.* § 110-6.1(g)(8) (a court hearing a petition to deny pretrial release can consider whether the defendant was on parole at the time of the current offense). Defendant's criminal history does not show that he complies with conditions set by courts.

¶ 19    Finally, defendant contends that the trial court failed to make an individualized finding that he would not comply with electronic monitoring, which section 110-6.1(f)(7) requires. See *id.* §

110-6.1(f)(7) ("[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized"). The fact that, in general, electronic monitoring devices can be removed is not specific to defendant. However, the court's finding that defendant poses a threat to the community was based on his criminal history, which is appropriately individualized. Accordingly, we affirm the trial court's decision to deny defendant pretrial release.

¶ 20                                    III. CONCLUSION

¶ 21    For the foregoing reasons, we affirm the trial court's decision granting the State's petition for pretrial detention.

¶ 22    Affirmed.

¶ 23    PRESIDING JUSTICE REYES, specially concurring:

¶ 24    I write separately as I disagree with my colleagues regarding the applicable standard of review. I believe the first two elements of the pretrial release analysis, which involve factual findings, should be reviewed under a manifest weight of the evidence standard. The third element, however, requires the trial court to exercise a degree of discretion and should thus be reviewed for an abuse of discretion. *E.g.*, *People v. Schulz*, 2024 IL App (1st) 240422, ¶¶ 18-19; *People v. Simmons*, 2024 IL App (1st) 240592-U, ¶¶ 19-20. As the result would be the same under any standard of review, I concur in the judgment.

¶ 25    LAMPKIN, J., specially concurring:

¶ 26    I write separately about the standard of review that should be applied to detention hearings held under the Pretrial Fairness Act. For the reasons previously stated in *People v. Pitts*, 2024 IL App (1st) 232336, ¶¶ 12-29, I believe the trial court's judgment should be reviewed using the manifest weight of the evidence standard. However, because the result would be the same

regardless of whether we applied the manifest weight standard or the abuse of discretion standard,

I concur in the judgment.